# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JUSTIN GREENUP   *

    v.   *   Civil No. CCB-17-1295

CSX TRANSPORTATION, INC.   *

## MEMORANDUM

The plaintiff Justin Greenup filed suit against the defendant CSX Transportation, Inc. ("CSX"), his former[1] employer and a freight railroad company headquartered in Florida with operations in 23 states. CSX has filed a motion for summary judgment,[2] which has been briefed fully. No oral argument is necessary. The court will grant the motion for the following reasons.

Mr. Greenup alleges that CSX terminated him on December 2, 2015, for reporting an injury he incurred more than eight months earlier while working as a freight conductor operator, thus violating the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109 *et seq*. Specifically, Mr. Greenup claims that, on March 31, 2015, he injured his hand when a hand brake he was operating snapped shut on his hand. ECF 25-4 at pp. 12, 20, 32.[3] Mr. Greenup alleges that he reported his injury to the yardmaster, who discouraged Mr. Greenup from reporting the injury or the broken hand brake and instead instructed Mr. Greenup to claim that the injury occurred at home. ECF 25-4 at pp. 23–24. On Mr. Greenup's insistence, the yardmaster called Robert Keller, a trainmaster, to the yard, to whom Mr. Greenup reported that he believed his hand to be broken. ECF 25-4 at pp. 27, 30. After resisting Mr. Greenup's requests for medical attention, ECF 25-4 at p. 25–27, Mr. Keller assisted Mr. Greenup in completing an injury report,

---

[1] On May 16, 2017, five days after Mr. Greenup filed his complaint in this case, CSX's internal appeals process maintained that Mr. Greenup had been insubordinate, but reduced Mr. Greenup's penalty from termination to unpaid suspension based on its conclusion that termination was unreasonable given the unique circumstances. ECF 22-13 at p. 9. Neither party assigns any significance to this development (nor do they clearly establish whether Mr. Greenup ultimately returned to CSX), and thus the court will not consider this further.

[2] The court will construe all facts in Mr. Greenup's favor. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2013).

[3] Citations to depositions refer to the corresponding ECF document number and page number, not the deposition page numbers.

telling Mr. Greenup to describe the injury as a contusion, and convinced Mr. Greenup to delay seeking medical treatment unless his hand still hurt the next day.[4] ECF 25-4 at pp. 27–28.

Following his injury report, Mr. Greenup claimed that he was treated unfavorably by Mr. Keller and other CSX employees, who became less friendly to Mr. Greenup than in the past. ECF 25-4 at pp. 30–31. On September 28, 2015, CSX scheduled an investigative hearing for October 14 stemming from concerns that absences Mr. Greenup recently had taken were a violation of CSX's attendance policies. On October 13, Mr. Keller called Mr. Greenup, and told him that the October 14 hearing had been cancelled, ECF 25-4 at p. 34, apparently because some of the absences had been approved and back-dated pursuant to the Family and Medical Leave Act ("FMLA"), ECF 22-18 at pp. 33–34, notwithstanding ongoing concerns regarding Mr. Greenup's absences which had not been excused under the FMLA. As a result, Mr. Keller, after speaking with Mr. Greenup about his availability for the rest of the day, instructed Mr. Greenup to mark up for work by 5:30 p.m. that day.[5] ECF 22-18 at p. 37; ECF 25-6 at p. 36. Mr. Greenup asserts that he said he would do his best to do so. ECF 25-4 at p. 35.

Both parties agree that Mr. Greenup failed to mark up for work by 5:30 p.m., that Mr. Greenup did not attempt to mark up until almost midnight, and that this attempt was unsuccessful. ECF 25-4 at pp. 36–37. Mr. Greenup asserted that he was confused about using the system and mistakenly believed that he actually had marked up. ECF 25-4 at pp. 37, 41. Mr. Greenup admitted, however, to having used the phone system on at least 20 different occasions in various formats, including using its automated format as well as using the system to talk to a crew member when the system malfunctioned. ECF 25-4 at pp. 38–39. Specifically, on September 12, 2015, approximately one month prior to this failure, Mr. Greenup marked up successfully using the automated phone system, and received a system-generated

---

[4] Mr. Greenup's hand felt better after a week, and does not appear to have been broken. ECF 25-4 at p. 22. Although Mr. Greenup claims in his opposition that Mr. Keller's resistance violated the FRSA, such a claim is not before the court at this time and therefore will not be addressed.

[5] Mr. Greenup essentially served as backup for the regularly scheduled conductors, so his schedule was sporadic, and he at times was required to "mark up" to indicate his availability for work that day. ECF 25-4 at p. 3

notification confirming that he had completed his mark-up. ECF 22-5 at p. 64. Due to Mr. Greenup's failure to mark up for work, Mr. Keller reinitiated the administrative proceedings against Mr. Greenup on October 19, ECF 25-4 at p. 44, culminating in CSX terminating Mr. Greenup on December 2, 2015, for insubordination. Mr. Greenup disputes the basis for his termination, claiming that his termination was retaliation for his decision to report his injury, and implies that the October 14 "phantom" hearing was set, in part, in retaliation for his report.[6]

Federal Rule of Civil Procedure 56(a) provides that:

> [a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a) (emphases added). The Fourth Circuit has explained that:

> [T]o maintain an FRSA retaliation claim past the summary judgment stage, a plaintiff must project sufficient admissible evidence to establish that: (1) the employee engaged in a protected activity; (2) the employer knew that the employee engaged in the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."

*Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 107 (4th Cir. 2016) (internal citation, quotation marks, and alterations omitted). Should the employee establish a prima facie FRSA retaliation claim, then the burden shifts to the employer to demonstrate by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." *Id.* (internal citation and quotation marks omitted).

Here, Mr. Greenup cannot establish a prima facie case of FRSA retaliation. Namely, Mr. Greenup cannot establish that his decision to submit the injury report was a contributing factor in the decision to terminate him.

---

[6] Mr. Greenup also challenges the fairness of CSX's disciplinary processes and their implementation in this case, but the court will not address such challenges here. *See Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 350 (4th Cir. 2014) (noting that the court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions") (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

3

Mr. Greenup proffers no direct evidence that his injury report was a factor in CSX's decision to terminate him, and his purported circumstantial evidence does not establish a genuine issue of material fact. The eight-month period between Mr. Greenup's protected activity (filing the injury report) and his termination does not, on its own, constitute sufficient temporal proximity to give rise to an inference of causation, *cf. Lowery v. CSX Transp., Inc.*, 690 F. App'x 98, 101 (4th Cir. 2017) (finding that sixteen days between the employee's protected activity and the adverse personnel action supported a conclusion of retaliatory animus),[7] and even accepting Mr. Greenup's claim that the eight months should be shortened due to his absences during that time would still leave at least a five-month gap which, standing alone, is too long to support a causal inference.

Additionally, although Mr. Greenup attempts to prove that his termination was pretext for retaliation by distinguishing his treatment from other CSX employees who were subjected to discipline, he fails to provide the court with a meaningful comparator. "The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). Such a showing should "include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (internal citation and quotation marks omitted) (alterations in original). The record does not show any similarly-situated employee whom Mr. Keller disciplined for insubordination. The parties identify only one other CSX employee whom Mr. Keller charged with insubordination ("Employee L"), whose employee records reflect conduct separate and distinct from absenteeism and insubordination, ECF 25-38 at pp. 3–4, and whose treatment by CSX is inconclusive due to the employee's decision to resign, ECF 22-15 at p. 1. Even if the court were inclined

---

[7] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

to accept Employee L as a similarly-situated comparator, the court would be unable to conclude that CSX treated Employee L more leniently than Mr. Greenup given that Employee L resigned before CSX rendered "treatment" for his violations.

Absent supporting evidence that disparate treatment occurred *in retaliation* for Mr. Greenup's injury report, Employee L's disciplinary history, on its own, does not produce a different outcome for Mr. Greenup's claims here. *See Lightner*, 545 F.3d at 265 (noting that plaintiffs may use evidence of disparate treatment as "circumstantial evidence to create an inference of discrimination," but that not all instances of disparate treatment are unlawful discrimination). Mr. Greenup provided the court with no supporting evidence that any differences between CSX's treatment of Mr. Greenup versus its treatment of Employee L were due in part to Mr. Greenup's injury report, as even the most generous construction of Mr. Greenup's claims about Mr. Keller's "coldness" towards him after the injury report does not amount to retaliatory animus.

Regarding the "phantom" October 14 administrative hearing,[8] it is clear that, after the hearing was cancelled, Mr. Keller believed that he had instructed Mr. Greenup to mark up by 5:30 p.m. that day. Mr. Greenup himself admitted that he had been asked to do so, and that he had not marked up by 5:30 p.m. Mr. Greenup's feigned ignorance about the phone system for marking up does nothing to excuse his failure to follow these instructions, especially because his ignorance is belied by his successful use of the system approximately one month prior to his insubordination. Finally, whether Mr. Greenup's failure to mark up was due to a technical glitch or his own recalcitrance is of no matter, as it is clear that CSX management believed that Mr. Greenup had been insubordinate, and it is CSX's perceptions which are relevant here. *Feldman*, 752 F.3d at 350. Similarly, whether Mr. Greenup equivocated about

---

[8] In reviewing the record of this case, the court notes that CSX provided compelling evidence regarding why the October 14 hearing was scheduled and then cancelled, given that Mr. Keller requested the hearing due to Mr. Greenup's numerous absences, some of which, after the hearing request but before the hearing itself, were excused under the FMLA. ECF 22-18 at pp. 33–34; *see* ECF 25-14 at p. 1 (Mr. Keller requesting that the attendance policy be applied to Mr. Greenup "if it is valid.").

5

marking up at 5:30 p.m. on October 14 also is of no matter, as the record clearly shows that Mr. Keller believed Mr. Greenup had agreed to do so and then had failed to follow through on this agreement. Mr. Greenup's absenteeism was well-documented, and Mr. Greenup provided the court with no reason to suspect that his injury report, filed more than six months before CSX reinitiated disciplinary proceedings and over eight months before CSX terminated him, factored into CSX's ultimate decision to discipline him for his attendance and insubordination. As a result, the court concludes that there are no genuine disputes of material facts, and thus will grant the motion for summary judgment. A separate order follows.

7/31/19
Date

Catherine C. Blake
United States District Judge